IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

FILED-CLERK
U.S. DISTRICT COURT

05 SEP 19 PM 3: 15

TEXAS-EASTERN

BY_____

|  |  |  |
|---|---|---|
| SCIENTIFIC-ATLANTA, INC. and MOTOROLA, INC. | ) ) ) | Civil Action No. |
| Plaintiffs, | ) ) ) | _6O5CV343_ |
| v. | ) ) | **DEMAND FOR JURY** |
| FORGENT NETWORKS, INC. | ) ) | **TRIAL** |
| Defendant. | ) ) ) | |

## DECLARATORY JUDGMENT

Plaintiffs Scientific-Atlanta, Inc. ("Scientific-Atlanta") and Motorola, Inc.

("Motorola") (collectively, "Plaintiffs") file this Declaratory Judgment against

Defendant Forgent Networks, Inc. ("Forgent") and in support of this action allege:

### Nature and Basis of Action

1.      This is an action arising under the Federal Declaratory

Judgment Act, 28 U.S.C. §§ 2201, *et seq.* and the United States patent laws, 35

U.S.C. § 1 *et seq.*  Plaintiffs request declarations that: (1) they do not infringe any

valid claim of U.S. Patent No. 6,285,746 B1, entitled "Computer Controlled Video

System Allowing Playback During Recording," (the "'746 Patent"), attached as

Exhibit A; (2) the claims of the '746 Patent are invalid; (3) the '746 Patent is

unenforceable due to inequitable conduct, and (4) Forgent has relinquished any and all rights to enforce the '746 Patent against the Plaintiffs or the Plaintiffs' customers, as defined below.

## The Parties

2.      Plaintiff Scientific-Atlanta is a global manufacturer and supplier of products, systems and services that connect consumers to video, data, and voice services.  Scientific-Atlanta is a corporation organized and existing under the laws of the State of Georgia and has its principal place of business at 5030 Sugarloaf Parkway, Lawrenceville, Georgia 30044.

3.      Plaintiff Motorola is a global manufacturer and supplier of products, systems and services that connect consumers to video, data, and voice services.  Motorola is incorporated under the laws of the State of Delaware and has its principal place of business at 1303 East Algonquin Road, Schaumburg, Illinois 60196.

4.      Defendant Forgent develops and licenses intellectual property and provides software solutions to customers.  Forgent is incorporated under the laws of the State of Texas and has its principal place of business at 108 Wild Basin Drive, Austin, Texas, 78746.

## Jurisdiction and Venue

5.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1332, and 1338, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 based on federal question jurisdiction.

6.      This Court has personal jurisdiction over Forgent because it resides in the State of Texas.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## Justiciable Controversy

8.      On July 14, 2005, Forgent filed a patent infringement lawsuit in the United States District Court for the Eastern District of Texas, Marshall Division against Echostar Communications Corp.; Echostar DBS Corp.; Echostar Technologies Corp.; Echosphere LLC; DirecTV Group, Inc.; DirecTV, Inc.; DirecTV Enterprises, LLC; DirecTV Operations, LLC; Charter Communications, Inc.; Cox Communications, Inc.; CoxCom, Inc.; Comcast Corporation; Comcast STB Software DVR, LLC; Time Warner Cable Inc.; and Cable One, Inc. *Forgent Networks, Inc. v. Echostar Communications Corp., et al.*, 2:05-cv-00318-LED (E.D. Tex. July 14, 2005) (hereinafter, the "Forgent Lawsuit").

9.      Pursuant to a Voluntary Dismissal, filed September 1, 2005, Cox Communications, Inc. has been dismissed from the Forgent Lawsuit.

ATL01/12030491v12

10.    Forgent asserts that it is the owner by assignment of all rights, title and interest in and to the '746 Patent.

11.    In the Forgent Lawsuit, Forgent claims that at least five of the Plaintiffs' customers -- CoxCom, Inc.; Comcast Corporation; Comcast STB Software DVR, LLC; Time Warner Cable Inc.; and Cable One, Inc. (collectively, the "Customers") -- and other parties, have infringed the '746 Patent by offering to sell and selling, and offering to lease and leasing within the United States digital video recording devices covered by the '746 Patent.

12.    Forgent also claims that the Customers, and the other parties, are inducing others to infringe the '746 Patent in the United States.

13.    Plaintiff Scientific-Atlanta and Plaintiff Motorola supply the digital video recording devices to the Customers that Forgent alleges infringe the '746 Patent.

14.    Although Plaintiffs manufacture, sell, and lease the allegedly infringing digital video recording devices for and to its Customers, Forgent has brought its action against Plaintiff's customers and not against Plaintiffs.

15.    Forgent's claims in the Forgent Lawsuit affect Plaintiffs' businesses in several ways, including interfering with Plaintiffs' existing and prospective customer relationships with regard to Plaintiffs' digital video recording devices.  In addition, the Customers have requested indemnification from

4

Plaintiffs, pursuant to various customer contracts, in connection with Forgent's infringement claims.

16.     Plaintiffs deny that the digital video recording devices that they supply to the Customers infringe the '746 Patent.

17.     Plaintiffs further contend that the '746 Patent is invalid, for failure to comply with one or more requirements of 35 U.S.C. § 101 *et seq.*

18.     Plaintiffs further contend that the '746 Patent is unenforceable due to inequitable conduct, as specifically pleaded herein.

19.     Plaintiffs further contend that Forgent has relinquished any and all rights to enforce the '746 Patent against them and against the Customers.

20.     For these reasons, Plaintiffs have a reasonable apprehension that they will be sued by Forgent for patent infringement.  Therefore, an actual case or controversy exists as to the infringement, validity, enforceability, and scope of the '746 Patent.

21.     Plaintiffs seek a declaration of non-infringement, invalidity, and unenforceability of the '746 patent in suit.

## COUNT I

## Declaration of Non-infringement of U.S. Patent No. 6,285,746 B1

5

22.     Plaintiffs incorporate and re-allege the averments contained in paragraphs 1 through 21, as if set forth in full.

23.     Forgent has asserted that digital video recorders leased or sold by the Customers and manufactured by the Plaintiffs infringe the '746 Patent. Plaintiffs deny such infringement, both literally and under the doctrine of equivalents.

24.     Plaintiffs do not make, use, import, offer for sale, or sell, and have not ever made, used, imported, offered to sell or sold, a digital video recording device to the Customers that infringes, contributes to, or induces infringement of any valid and enforceable claim of the '746 Patent, either literally or under the doctrine of equivalents.

25.     Forgent has created a reasonable apprehension of suit by, among other things, suing the Customers regarding their sale and use of Plaintiffs' digital video recording devices.

26.     There is an actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, between Plaintiffs and Forgent concerning the infringement of the '746 Patent based on Plaintiffs' digital video recording devices that are supplied to the Customers.

27.     Plaintiffs are entitled to a declaratory judgment that Plaintiffs' digital video recording devices that are supplied to the Customers do not infringe,

6

contribute to, or induce infringement of any claim of the '746 Patent, either literally or under the doctrine of equivalents.

28.    Plaintiffs are entitled to further relief, including injunctive relief and damages, pursuant to 28 U.S.C. § 2202, as the Court may deem just and proper.

## COUNT II

### Declaration of Invalidity of U.S. Patent No. 6,285,746 B1

29.    Plaintiffs incorporate and re-allege the averments contained in paragraphs 1 through 28, as if set forth in full.

30.    Based upon prior art cited during prosecution, as well as other prior art, the claims of the '746 Patent are invalid under 35 U.S.C. §§102, 103.

31.    The '746 Patent, and each of the claims therein, are invalid for failure to comply with one or more requirements of 35 U.S.C. §§101, 112.

32.    Forgent has created a reasonable apprehension of suit by, among other things, suing the Customers regarding their sale and use of Plaintiffs' digital video recording devices.

33.    There is an actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, between Plaintiffs and Forgent concerning the validity of the claims of the '746 Patent.

7

34.    Plaintiffs are entitled to a declaratory judgment that the claims of the '746 Patent are invalid.

35.    Plaintiffs are entitled to further relief, including injunctive relief and damages, pursuant to 28 U.S.C. § 2202, as the Court may deem just and proper.

## COUNT III

### Unenforceability Due To Inequitable Conduct

36.    Plaintiffs incorporate and re-allege the averments contained in paragraphs 1 through 35, as if set forth in full.

37.    The '746 patent is unenforceable due to inequitable conduct in its procurement and the procurement of related patents and patent applications, in violation of the duties imposed upon the applicants by 37 C.F.R. §1.56.

38.    The '746 patent is unenforceable due to inequitable conduct committed during the prosecution of U.S. Patent Applications Nos. 07/703,685 ("the '685 application"), 08/158,045 ("the '045 application"), 08/425,729 ("the '729 application"), 09/490,905 ("the '905 application"), 09/757,392 ("the '392 application"), 09/894,051 ("the '051 application"), 10/264,749 ("the '749 application"), and/or 10/691,675 ("the '675 application") ("collectively "The Applications") for failure to disclose, to the patent examiner during prosecution of The Applications, material subject matter contained in Duran, et al., "A PC-

8

compatible, multiprocessor workstation for video, data, and voice communication," *Visual Communications & Image Processing IV*, (SPIE 1989) pp. 232-236 ("the Duran article").

39.    Each of the named inventors on The Applications and each of the prosecuting attorneys, had a duty of candor and good faith, including a duty to disclose, under 37 C.F.R. §1.56 – ("Rule 56"), during the pendency of The Applications.

40.    "Applicants" as used herein includes the named inventors and their agents, including their prosecuting attorneys, for any events occurring prior to any assignment of their rights in The Applications and any assignee and their agents, including their prosecuting attorneys, for events occurring after any such assignment.

41.    Each person substantively involved in the preparation and prosecution of any of The Applications had a duty of candor and good faith, including a duty to disclose, under 37 C.F.R. §1.56 – ("Rule 56"), during the pendency of each of The Applications with which the person was substantively involved.

42.    Although the Duran article is mentioned in the '746 Patent, neither that article nor all of the relevant subject matter in it was disclosed to the patent examiner during prosecution, even though upon information and belief the

9

inventors and their prosecuting attorneys appreciated its materiality. Only some, but not all, of the content of the Duran article was disclosed to the USPTO in the specifications of The Applications. The undisclosed, remaining content in the Duran article included the disclosure of communication multiplexer functions and circuitry and magnetic disks (hard disks) for the storage and retrieval for later playback of video telephone conferences and other multimedia. For example, the Duran article discloses: (1) "communication multiplexer which combines compressed video and audio with PC data, serial inputs, and FAX;" (2) "communications multiplexer uses a DSP" (3) "DSP chip development has provided general purpose programmable processor chips;" (4) "storing and retrieving video sequences (with sound) and still pictures on magnetic or optical discs;" (5) "it is now economically possible to provide users a desktop workstation for processing video and audio in real time – for real time communication, for storage for later playback, or for 'store and forward' communication;" and (6) "During video phone calls, users may transfer computer files, execute programs, send snapshots of computer screens, send FAX messages, and transfer data from other devices through serial data ports built into the workstation. The design also supports storing and retrieving video sequences (with sound) and still pictures on magnetic or optical discs." As a further example, although Applicants disclosed to the USPTO in the specifications of The Applications that the Duran article

10

disclosed an alternative Video Processor 24 of Figure 2 of The Applications, the Applicants failed to disclose that the Duran article at Figure 3 and accompanying text disclosed the remainder of Figure 2 of The Applications.

43.    At all times during the prosecution of The Applications, one or more of the individuals who were subject to Rule 56 had knowledge of the Duran article and appreciated its materiality, including the remaining content of the Duran article that was not disclosed to the USPTO.  Upon information and belief these individuals included at least the inventors and their prosecuting attorneys and such failure to disclose was with the intent to mislead the patent examiner into wrongfully granting claims of The Applications.

44.    During the prosecution of the '685 application, the applicants submitted an Information Disclosure Statement bearing a certificate of mailing dated July 15, 1991 ("the July 1991 IDS"), indicating that the applicants appreciated the materiality of the Duran article.  Although the July 1991 IDS listed the Duran article and U.S. Patent No. 4,965,822, the copy of the Duran article submitted by Applicants lacked any indication of a date of publication, and the Examiner refused to accept it for consideration.

45.    The Examiner of the '685 application did not consider the Duran article as prior art to the '685 application.  In an office action dated October 9, 1992, the Examiner of the '685 application stated that he did not consider the

11

Duran article as prior art and suggested that the Applicants submit additional material to establish the date of the Duran article. At no time during the prosecution of the '685 application did the Examiner retract that statement or otherwise indicate that he considered the Duran article as prior art. Contemporaneously with that October 9, 1992 office action, the Examiner returned FORM PTO-1449 to the Applicants with his initials next to the first line of the citation of the Duran article, a line or strike-out through the second line of the citation to the Duran article, and the word "undated" next to the first line of the citation of the Duran article. At no time during the prosecution of the '685 application did the Examiner retract the strike-out, the "undated" note, or otherwise indicate on the FORM PTO-1449 that he considered the Duran article as prior art. In an office action dated August 24, 1993, the Examiner of the '685 application noted Applicants' statements regarding the publication date of the Duran article, but again suggested that the Applicants submit additional material to establish the date of the Duran article, including a copy of the table of contents and the copyright page of the Duran article. In an Advisory Action dated November 3, 1993 the Examiner refused to enter Applicants' amendment. At no time during the prosecution of the '685 application did the Examiner allow any claim over the prior art of record and, therefore, it was not necessary for the Examiner to consider the Duran article as prior art.

46.     Applicants failed to disclose the remaining content of the Duran article to the USPTO during the prosecution of the '045 application. At no time during the prosecution of the '045 application did the Examiner indicate that he had considered the Duran article as prior art. At no time during the prosecution of the '045 application did the Examiner retract the strike-out, the "undated" note, or otherwise indicate on the FORM PTO-1449 that he considered the Duran article as prior art. At no time during the prosecution of the '045 application did the Examiner allow any claim over the prior art of record and, therefore, it was not necessary for the Examiner to consider the Duran article as prior art.

47.     Applicants failed to disclose the remaining content of the Duran article to the USPTO during the prosecution of the '729 application. At no time during the prosecution of the '729 application did the Examiner indicate that he had considered the Duran article as prior art. At no time during the prosecution of the '729 application did the Examiner retract the strike-out, the "undated" note, or otherwise indicate on the FORM PTO-1449 that he considered the Duran article as prior art. At no time during the prosecution of the '729 application did the Examiner allow any claim over the prior art of record and, therefore, it was not necessary for the Examiner to consider the Duran article as prior art.

48.     Applicants' failure to obtain consideration of the Duran article as prior art in any of the '685, '045, and/or '729 applications did not result in the

13

issuance of any of those applications as a patent because none of the claims in any of those applications were ever allowed over the prior art of record. Applicants' subsequent intentional failure to disclose the Duran article in the '905 and later applications was an improper attempt to deceive the USPTO into obtaining claims focused on the undisclosed, remaining content of the Duran article—communications multiplexers functions and circuitry and disk storage for recording and later playback of video teleconferences and multimedia.

49.     Applicants failed to disclose the remaining content of the Duran article to the USPTO during the prosecution of the '905 application. During the prosecution of the '905 application Applicants submitted a preliminary amendment bearing a certificate of mailing dated January 25, 2000 (the "January 2000 Preliminary Amendment"). In the January 2000 Preliminary Amendment Applicants represented to the USPTO that claims 31 and 32 of the '905 application were directed to a multiplexer function and that none of the '685, '045 and/or '729 applications were directed to a multiplexer function and circuitry. Claims 31 and 32 of the '905 application are directed to a multiplexer function and none of the '685, '045 and/or '729 applications are directed to a multiplexer function and circuitry.

50.     As described above, the Duran article discloses a communication multiplexer function and circuitry. The Duran article discloses that

14

the communication multiplexer circuitry can include a digital signal processor that could comprise a general purpose programmable processor. The discussion of the Duran article in the '905 application did not disclose those facts. Accordingly, the undisclosed, remaining content in the Duran article was material to the patentability of the '905 application. Applicants failed to disclose the undisclosed, remaining content in the Duran article with the intent to deceive the USPTO.

51.    During prosecution of the '905 application Applicants submitted an Information Disclosure Statement bearing a certificate of mailing dated April 18, 2000 ("April 2000 IDS") in which Applicants intentionally recited voluminous and cumulative prior art already of record in the '685, '045, and/or '729 applications. However, Applicants failed to cite the Duran article in order to bury the Duran article and thereby prevent the Examiner from considering the Duran article for the first time as prior art. Applicants also intentionally misrepresented to the USPTO that the April 2000 IDS disclosed the "best" art of which the Applicants were aware. Specifically, the Applicants intentionally misrepresented to the USPTO that "this statement discloses only the best art of which the Applicant is aware."

52.    The April 2000 IDS cited every single non-patent publication reference cited in the '685 application, the '045 application, and/or the '729 application, with the exception of the Duran article. Upon information and belief,

15

this intentional and selective omission of the Duran article was a deliberate attempt

to bury the Duran article and prevent the Examiner from considering the Duran

article for the first time as prior art. Applicants further misleadingly represented

that "[t]he attached references were cited in parent Appl. Ser. No. 08/158,045, filed

November 24, 1993 and are recited herein for the convenience of the Examiner."

Applicants even misleadingly apologized for not submitting a new copy of the So,

et al. reference. Upon information and belief, Applicants made these misleading

statements to deceive the Examiner into believing that the Examiner

"conveniently" had a complete copy set of all non-patent prior art (with the

exception of the So, et al. reference) in the hope, and with the expectation, that the

Examiner would not consider the Duran article for the first time as prior art. These

misleading statements served no other purpose than to bury the Duran article.

     53.    Upon information and belief, the failure to disclose the Duran

article in the April 2000 IDS was intentional. The April 2000 IDS disclosed U.S.

Patent No. 4,965,822. The only place that U.S. Patent No. 4,965,822 was cited

prior to the April 2000 IDS was in the original July 1991 IDS that cited only two

references—that patent and the Duran article. The fact that Applicants submitted

only the patent from the July 1991 IDS shows that the failure to disclose the Duran

article was intentional.

16

54.    Each patent issuing with a claim of priority to the '685, '045, '729, and '905 applications is unenforceable, including the '765 patent, because of the inequitable conduct conducted during the prosecution of the '685, '045, '729, and '905 applications.

55.    Applicants failed to disclose the remaining content of the Duran article to the USPTO during the prosecution of the '392 application. Applicants did not submit any Information Disclosure Statements during the prosecution of the '392 application.

56.    During the prosecution of the '392 application Applicants submitted a preliminary amendment bearing a certificate of mailing dated February 7, 2001 (the "February 2001 Preliminary Amendment"). In the February 2001 Preliminary Amendment Applicants represented to the USPTO that claim 31 of the '392 application was directed to a data storage device and that a data storage device was not the primary subject matter of the '685, '045 and/or '729 applications. Claim 31 of the '392 application is directed to a data storage device and a data storage device was not the primary subject matter of the '685, '045 and/or '729 applications.

57.    The Duran article discloses a data storage device, including magnetic disks (hard drives). The Duran article discloses and, upon information and belief, enables all of the limitations of claim 31 of the '392 application to the

17

same extent that those limitations are disclosed and enabled in the '392 application. The discussion of the Duran article in the '392 application did not disclose those facts. Accordingly, the remaining content in the Duran article was material to the patentability of the '392 application. Applicants failed to disclose the remaining content in the Duran article with the intent to deceive the USPTO.

58.    During the prosecution of the '392 application Applicants submitted a supplemental preliminary amendment bearing a certificate of mailing dated May 7, 2001 (the "May 2001 Amendment"). In the May 2001 Amendment Applicants cancelled claim 31 of the '392 application and added claims 32-36.

59.    The Duran article discloses and, upon information and belief, enables all of the limitations of claims 32-36 of the '392 application to the same extent that those limitations are disclosed and enabled in the '392 application. The discussion of the Duran article in the '392 application did not disclose those facts. Accordingly, the remaining content in the Duran article was material to the patentability of the 392 application. Applicants failed to disclose the remaining content in the Duran article with the intent to deceive the USPTO.

60.    Each patent issuing with a claim of priority to the '685, '045, '729, '905, and '392 applications is unenforceable, including the '765 patent, because of the inequitable conduct committed during the prosecution of the '685, '045, '729, '905, and '392 applications.

18

61.    Applicants have continued to commit inequitable conduct in additional applications that claim priority to the '685, '045, '729, '905, and '392 applications, including the '675 application. Applicants have failed to disclose the remaining content of the Duran article to the USPTO during the prosecution of the '675 application.

62.    During prosecution of the '675 application Applicants submitted a Preliminary Amendment bearing a certificate of mailing dated July 28, 2005 (the "July 2005 Amendment") canceling claims 1-35 and adding claims 36 to 75. The Duran article discloses and, upon information and belief, enables each and every limitation of claims 36 to 75 to the same extent that those claims are disclosed and enabled by the '675 application. The discussion of the Duran article in the '675 application did not disclose those facts. Accordingly, the remaining content in the Duran article was material to the patentability of the '675 application. Applicants failed to disclose the remaining content in the Duran article with the intent to deceive the USPTO.

63.    During the prosecution of the '685 application, Applicants submitted a declaration purportedly from the named inventors wherein each inventor declared that they were "an original, first and joint inventor of the subject matter which is claimed and for which a patent is sought on the invention entitled: A MULTIPLE MEDIUM MESSAGE RECORDING SYSTEM which was filed as

19

S. N. 703,685 on May 21, 1991." (The "May 1991 Declaration.") The named

inventors also declared in The May 1991 Declaration that "I have reviewed and

understand the contents of the ['685 application] specification, including the

claims." Thus, the May 1991 Declaration expressly recognized the difference

between the subject matter in the specification and the remainder of the claims.

The May 1991 Declaration did not include a declaration from any of the named

inventors that they believed they were the inventor of any unclaimed subject matter

in the specification of the '685 application.

     64.    During prosecution of the '392 application, Applicants

cancelled all claims originally filed in the '685 application and added new claims

drawn to what Applicants represented as disclosed but previously unclaimed

subject matter. During prosecution of the '392 application the USPTO stated in a

Notice of Missing Parts dated April 3, 2001 that "[a] *properly signed oath or*

*declaration in compliance with 37 CFR 1.63, identifying the application by the*

*above Application Number and Filing Data, is required.*" (Emphasis in original.)

In response, Applicants submitted a copy of the May 1991 Declaration. The May

1991 Declaration does not identify the '392 application by its application number

and filing date. The May 1991 Declaration does not include a declaration by any

of the named inventors that they invented what is claimed in the '392 application.

Upon information and belief, Applicants ignored the USPTO's express request that

they submit a new declaration and intentionally submitted a copy of the May 1991 Declaration because Applicants knew that none of the named inventors believed that they invented what was claimed in the new claims of the '392 application.

65.    In light of the foregoing, the claims of the '746 Patent were procured by inequitable conduct and are unenforceable.

## COUNT IV

## Unenforceability Due To Forfeiture By Forgent's Actions and Inactions

66.    Plaintiffs incorporate and re-allege the averments contained in paragraphs 1 through 65, as if set forth in full.

67.    Forgent is unable to enforce the patent against the Plaintiffs for a number of reasons.

68.    Forgent is unable to assert the patent against the Plaintiffs because Forgent has unreasonably and inexcusably delayed filing the present suit beyond the date on which it knew or should have known of Plaintiffs' allegedly infringing activities, all to the material prejudice of Plaintiffs.

69.    Forgent is unable to assert the patent against the Plaintiffs because Forgent unreasonably delayed in the prosecution of the '746 Patent, resulting in prejudice to Plaintiffs and intervening adverse public rights.

70.    Forgent is unable to assert the patent against the Plaintiffs because Forgent has misused its patent by attempting to impermissibly broaden the

scope of the '746 Patent to cover digital video recording devices, and then suing for infringement by such digital video recording devices, resulting in an anticompetitive effect.

71.     Forgent has created a reasonable apprehension of suit by, among other things, suing the Customers regarding their sale and use of Plaintiffs' digital video recording devices.

72.     There is an actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, between Plaintiffs and Forgent concerning the ability of Forgent to assert its patent.

73.     Plaintiffs are entitled to a declaratory judgment that Forgent has forfeited any and all right to enforce the claims of the '746 Patent against the Customers.

74.     Plaintiffs are entitled to further relief, including injunctive relief and damages, pursuant to 28 U.S.C. § 2202, as the Court may deem just and proper.

## **Request for Relief**

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment:

A.     Declaring that Plaintiffs' digital video recording devices sold to the Customers do not infringe any claim of the '746 Patent;

B.     Declaring that the claims of the '746 Patent are invalid;

22

C.    Declaring that the '746 Patent is unenforceable due to inequitable conduct;

D.    Declaring that Forgent has forfeited by its actions and inactions any and all rights to enforce the claims of the '746 Patent against the Plaintiffs or the Customers;

E.    Declaring this case exceptional and awarding Plaintiffs their attorneys' fees and costs incurred in this action, pursuant to 35 U.S.C. § 285; and

F.    Enjoining Forgent, its predecessors, successors, parents, subsidiaries, affiliates, assigns, officers, agents, servants, employees, trustees, representatives, associates, insurers, stockholders, and attorneys, and those persons in active concert or participation with Forgent who receive actual notice thereof, from initiating infringement litigation or threatening Plaintiffs, or any of their Customers, dealers, agents, servants, or employees, or any prospective or present sellers, dealers, or users of Plaintiffs' accused digital video recording devices, with infringement litigation or charging any of them either verbally or in writing with infringement of the '746 Patent because of the manufacture, use, sale, lease and/or offer to sell or lease of the Plaintiffs' accused digital video recording devices;

G.    Granting Plaintiffs such other and further relief as the Court may deem just and proper.

## Jury Demand

Plaintiffs demand trial by jury on all issues triable by a jury in this case.

Respectfully submitted this 19th day of September, 2005.


_Deron R. Dacus_

Tracy Crawford
State Bar No. 05024000
Deron Dacus
State Bar No. 00790553
Ramey & Flock LLP
100 East Ferguson
Suite 500
Tyler, Texas  75702
Phone: 903-597-3301
Fax: 903-597-2413
tcrawford@rameyflock.com
derond@rameyflock.com

Counsel for Scientific-Atlanta, Inc.


_Michael E. Jones_  by permission Deron R. Dacus

Michael E. Jones
State Bar No. 10929400
Potter Minton
P. O. Box 359
Tyler, TX 75710
Phone: 903-597-8311
Fax: 903-593-0846
mikejones@potterminton.com


Counsel for Motorola, Inc.